UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL CASE |
| v. | : | No. 3:09cr117 (MRK) |
| | : | |
| ALECK GLADNEY | : | |

**RULING AND ORDER**

In a Superseding Indictment [doc. # 586] returned December 16, 2009, Defendant Aleck Gladney was charged with several federal narcotics offenses, including one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846 (Count One); and three counts of use of a telephone to facilitate the commission of a drug trafficking felony in violation of 21 U.S.C. § 843(b) (Counts Sixteen, Seventeen, and Eighteen). On February 12, 2010, Mr. Gladney pled guilty to a single count of use of a telephone to facilitate the commission of a drug trafficking felony (Count Eighteen). Count Eighteen alleged that Mr. Gladney "knowingly, intentionally and unlawfully used a communications facility, that is a telephone, to facilitate the knowing, intentional and unlawful possession with intent to distribute and distribution of cocaine." Superseding Indictment [doc. # 586] ¶ 23. Mr. Gladney's plea agreement included a waiver of his right to "appeal or collaterally attack in any proceeding the conviction or sentence of imprisonment imposed by the Court as long as that sentence [did] not exceed 12 months and one day." Plea Tr. [doc. # 1169] at 20:15-21; *see id.* at 21:4-16; Sentencing Tr. [doc. # 1170] at 36:15-26. However, the waiver did not extend to claims based on ineffective assistance of counsel. *See* Plea Tr. [doc. # 1169] at 20:17-21; Sentencing Tr. [doc. # 1170] at 36:17-23.

Based upon the parties' drug quantity stipulation of at least 50 grams but less than 100 grams of cocaine, a Total Offense Level of 13, and a Criminal History Category of III, the United States Probation Office calculated a guideline imprisonment range of 18-24 months and a fine range of $3,000 to $30,000. At a sentencing hearing on August 16, 2010, the Court – over the Government's objection – concluded that Mr. Gladney belonged in Criminal History Category II, reducing Mr. Gladney's guideline imprisonment range to 15-21 months. After hearing the parties' arguments, the Court sentenced Mr. Gladney to a non-Guidelines sentence of 12 months and 1 day of imprisonment, a $3,000 fine, and a one-year period of supervised release. The Court entered judgment on August 17, 2010, and in the Judgment [doc. # 1100], the Court explained the non-Guidelines sentence as follows:

> The Court concluded based on the information in the Pre-Sentence Report that the Defendant belongs in Criminal History Category II, rather than in Criminal History Category III. Based on a Total Offense Level of 13 and a Criminal History Category of II, the Defendant's Guidelines Sentence range was 15-21 months. Given the Defendant's limited role in the offense charged and the Government's consent to a non-Guidelines sentence, the Court imposed a sentence of 12 months and 1 day. The Court believes that a sentence of 12 months and 1 day is sufficient but not greater than necessary to achieve the purposes of a criminal sentence in this case.

On August 27, 2010, Mr. Gladney appealed his conviction and sentence on the grounds of ineffective assistance of counsel. On October 4, 2010, Mr. Gladney, through new counsel, moved for a stay of execution of his sentence pending appeal under 18 U.S.C. § 3143(b), claiming ineffective assistance of counsel. *See* Mot. for Stay of Execution of Sentence [doc. # 1160]. In support of the motion, Mr. Gladney alleges that prior counsel was ineffective for two reasons: (1) counsel allowed Mr. Gladney to stipulate to at least 50 but less than 100 grams of cocaine when Mr. Gladney only admitted responsibility for purchasing 1.4 grams of cocaine; and (2) counsel did not

"vigorously press" a motion to suppress the 1.4 grams of cocaine seized from Mr. Gladney. Mem. in Supp. [doc. # 1161] at 7. On November 4, 2010, Mr. Gladney submitted an affidavit from attorney Paul Spinella, affirming that Mr. Spinella believes the fact that Mr. Gladney's counsel allowed him to stipulate to a drug quantity of at least 50 but less than 100 grams of cocaine and the fact that "counsel never acted to suppress the evidence seized from [Mr. Gladney]" prejudiced the outcome of Mr. Gladney's case, and that absent those alleged failures, Mr. Gladney likely could have either prevailed at a criminal trial or negotiated a more favorable plea agreement. Spinella Aff. [doc. # 1202] at 2.

The Court heard argument on the pending motion on November 5, 2010 and received post-argument briefing. Mr. Gladney is set to report to the Bureau of Prisons on February 14, 2011.

## I.

Section 3143(b) of Title 18 of the United States Code provides that a court may order a defendant released pending appeal so long the court finds: (a) that the defendant is not likely to flee or pose a danger to another person or the community, by clear and convincing evidence; and (b) "that the appeal is not for purposes of delay and raises a substantial question of law or fact likely to result in – (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total time already served plus the expected duration of the appeal." *Id.* §§ 3143(b)(1)(A) and (B). The Government does not argue that Mr. Gladney is a flight risk or poses a danger to any person or the community, and all concerned acknowledge that Mr. Gladney will serve his 12 months and 1 day long before his appeal is resolved. Nevertheless, the Court finds that Mr. Gladney has not raised a substantial question of law or fact that is likely to result in reversal, a new trial, or a reduced sentence. The

Court therefore denies Mr. Gladney's motion.

In *United States v. Randell*, 761 F.2d 122 (2d Cir. 1985), the Second Circuit held that the phrase "raises a substantial question of law or fact likely to result in reversal or an order for a new trial" in § 3143(b) should not be "taken to condition bail upon a district court's finding that its own judgment is likely to be reversed on appeal." *Id.* at 124. The Court explained:

> To define "substantial" questions as those "likely to result in reversal or an order for a new trial" not only renders superfluous the word "substantial" – since an insubstantial question will hardly ever result in reversal – but presumes that district courts will consciously leave "substantial" errors uncorrected.

*Id.* Instead, the court held, a district court considering a motion under § 3143(b) should "determine first whether any question raised on appeal is a 'substantial' one," with a "substantial question" defined as "a 'close' question or one that very well could be decided the other way." *Id.* at 125 (citation and quotation marks omitted). If a district court "does find that a question raised on appeal is 'substantial,' it must then consider whether that question is 'so integral to the merits of the conviction on which the defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial,'" or – extending the *Randell* analysis to the current version of the statute – imposition of a reduced sentence. *Id.* (citation omitted).[1] "[O]n . . . all the criteria set out in [§ 3143(b)(1)(B)], the burden of persuasion rests on the defendant." *Id.*

## II.

The first question this Court must consider is whether Mr. Gladney has shown that his

---

[1] The version of 18 U.S.C. § 3143(b) that the Second Circuit construed in *Randell* only allowed for release pending appeal if the appeal raised a substantial question of law or fact likely to result in reversal or an order for a new trial. Nonetheless, the Court believes that the analysis in *Randell* could also be applied to subsections (b)(1)(B)(iii) and (iv) in the current version of the statute, which permit release pending an appeal when the appeal presents a substantial question of law or fact likely to result merely in a reduced sentence.

ineffective assistance of counsel claim raises a substantial question – that is, a close question – of law or fact. Claims of constitutionally ineffective assistance of counsel are subject to well-established criteria for review. To support a claim for ineffective assistance of counsel, a defendant must demonstrate, first, that his trial counsel's performance "fell below an objective standard of reasonableness according to prevailing professional norms." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984)). In determining whether counsel's performance was objectively reasonable, this Court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound [legal] strategy.'" *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004) (alteration in original) (quoting *Strickland*, 466 U.S. at 689). Indeed, to show that counsel's performance fell below "an objective standard of reasonableness," a defendant must "demonstrate that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Rosario v. Ercole*, 601 F.3d 118, 129 (2d Cir. 2010) (citation and quotation marks omitted). Where a defendant has entered into a plea agreement that includes a waiver of appeal rights, "[a]n ineffective assistance of counsel claim survives the guilty plea or the appeal waiver only where the claim concerns 'the advice [the defendant] received from counsel.'" *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (alteration in original; citation omitted). A defendant asserting such a claim cannot rely on merely "a purported failure [by counsel] to enhance the defendant's case." *Id.* at 139.

Despite the fact that Mr. Gladney's conviction and sentence were the result of a guilty plea, Mr. Gladney has not specifically alleged that he entered into that plea because of defective advice

from counsel. Instead, Mr. Gladney asserts that the plea agreement he entered into was "defective . . . due to defense counsel's failure to vigorously press the Motion to Suppress" and because of counsel's "[stipulation] to facts necessary to the offense that were unsupported by the evidence." *See* Mem. in Supp. [doc. # 1161] at 6-7. Mr. Gladney also suggests in passing that counsel "taint[ed] [his] defense with a faint rather than vigorous defense" by agreeing to a stipulation that "'most of the calls were gambling related' thereby agreeing by inference . . . that the remainder of the conversations were drug related." *Id.* at 5.[2] It was Mr. Gladney, though, and not his lawyer, who ultimately had to agree to the plea. The Court thoroughly canvassed Mr. Gladney before accepting his plea, and Mr. Gladney signed the plea agreement during his plea hearing before the Court and stated that he signed it freely and voluntarily. *See* Plea Tr. [doc. # 1169] at 22:13-24:1. Indeed, the assertions underlying Mr. Gladney's ineffective assistance of counsel claim suggest, at most, that counsel "fail[ed] to enhance [Mr. Gladney's] case," *Parisi*, 529 F.3d at 139 – and not that Mr. Gladney's plea and waiver of appeal rights were unknowing or involuntary. *See id.* at 138-39.

Even if the Court construes Mr. Gladney's claim to allege that his counsel's advice to enter into the plea agreement was faulty, it does not succeed. Mr. Gladney's claim that he signed a "defective" plea agreement, Mem. in Supp. [doc. # 1161] at 6, is based on two broad allegations: (a) that, at the time Mr. Gladney pled guilty, his counsel had not "vigorously" pursued a motion to suppress, *id.* at 7; and (b) that the stipulation in his plea agreement as to drug quantity was not supported by the evidence. *See id.* Assuming those assertions are meant to support a claim that

---

[2] This is a very speculative assertion, and Mr. Gladney's reasoning is dubious. In any case, it was not objectively unreasonable for Mr. Gladney's counsel to negotiate an agreement that included a stipulation to a fact that Mr. Gladney himself does not dispute – that most of his calls to Mr. Maylor were about gambling.

6

counsel wrongly advised Mr. Gladney to accept a plea, Mr. Gladney has failed to raise a substantial question of fact or law because he has not alleged specific facts that would show that his former counsel's advice was objectively unreasonable.

First, Mr. Gladney did file a motion to suppress and the motion was fully briefed at the time of Mr. Gladney's plea; Mr. Spinella is simply mistaken on that point. Advising a client to accept a plea before the court has ruled on a motion to suppress is a strategic choice by counsel. *See, e.g.*, *Sylvester v. United States*, 369 F. App'x 216, 219 (2d Cir. 2010) (summary order) (finding that counsel's strategic choice to advise his client to plead guilty did not constitute ineffective assistance of counsel). As the Second Circuit has noted, in the context of ineffective assistance of counsel claims, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengable." *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). "[E]ven strategic choices made after less than complete investigation do not amount to ineffective assistance – so long as the known facts made it reasonable to believe that further investigation was unnecessary." *Id.* (citing *Strickland*, 466 U.S. at 690-91).

Mr. Gladney has not alleged any facts that would suggest that his former counsel failed to adequately investigate relevant facts and law before advising Mr. Gladney with regard to the plea agreement. Moreover, even if counsel's investigation was "less than complete," *id.* – and Mr. Gladney has alleged no facts suggesting that it was – there is no basis to conclude that further investigation was necessary to be able to responsibly advise Mr. Gladney to agree to the plea at that time. On the record before the Court, counsel's presumed advice to Mr. Gladney to enter into the plea agreement was not objectively unreasonable, particularly given the 12 months and 1 day sentence he received. *See, e.g.*, *United States v. Kurti*, 427 F.3d 159, 163 (2d Cir. 2005) (rejecting

7

defendant's claim the failure of his counsel "to object to [] multiplicitous charges in the information" constituted ineffective assistance of counsel, where the plea agreement allowed the defendant to avoid trial on charges that could have resulted in a longer term of imprisonment, and the defendant was ultimately sentenced to a term less than the maximum that he faced as a result of his plea).

In his affidavit, Mr. Spinella speculates that had trial counsel taken a different course, Mr. Gladney would "likely . . . have either prevailed at a criminal trial or his counsel could have negotiated a better plea bargain," Spinella Aff. [doc. # 1202] ¶ 10, but there is no support for that speculative assertion. The one person who proceeded to trial in this multi-defendant case was convicted; Mr. Maylor, whom Mr. Gladney dealt with, is a formidable witness. The likelihood is that Mr. Gladney would have been convicted of at least one count of use of a telephone to facilitate the commission of a drug trafficking felony, if not more. Indeed, at his plea colloquy, Mr. Gladney admitted that he was guilty of that offense. *See* Plea Tr. [doc. # 1169] at 30:13-31:18. Moreover, the sentence Mr. Gladney received as a result of his guilty plea was lower than the minimum sentence prescribed by the Guidelines. In sum, the mere fact that the Court had issued no decision on the motion to suppress at the time Mr. Gladney entered into his plea agreement does not raise a substantial question of law or fact as to whether Mr. Gladney received ineffective assistance of counsel.

Second, the question Mr. Gladney raises regarding the stipulated drug quantity is not a substantial one. The facts in the record suggest neither that counsel was objectively unreasonable in negotiating a plea agreement that stipulated to a drug quantity of at least 50 grams but less than 100 grams of cocaine, nor that counsel made an objectively unreasonable strategic choice if and when he advised Mr. Gladney to enter into a plea agreement containing that stipulation. During the

8

plea colloquy, the Court specifically asked Mr. Gladney whether he agreed that his relevant conduct included "at least 50 grams of cocaine but less than 100 grams," to which Mr. Gladney replied – under oath – "yes, your Honor." Plea Tr. [doc. # 1169] at 19:14-19. During the plea colloquy, Mr. Gladney also admitted that he purchased cocaine from Mr. Maylor for his own use and for distribution: "I know it might sound funny that I'm saying yes and no, but if I try to explain, I'm saying yes because I was buying it, whatever, for personal use for me, and I also was sharing it. So I guess that makes it me distributing it." *Id.* at 31:4-8. Thereafter, the Court queried Mr. Gladney as follows: "So you used a telephone to acquire cocaine for your own purposes and also for the purposes of distributing it to others?," to which Mr. Gladney said: "Yes." *Id.* at 31:11-14.

Moreover, the Pre-Sentence Report ("PSR") indicated that Mr. Gladney was a "very frequent caller to [Mr.] Maylor and was a regular customer of [Mr.] Maylor, usually buying half ounce quantities of cocaine every week and a half to two weeks." PSR ¶ 14. The PSR also indicated that while Mr. Gladney maintained that he was not a "drug trafficker," *id.* ¶ 17, he did "convey[] that he used cocaine personally and shared it with others from time to time." *Id.* At the sentencing hearing, Mr. Gladney was asked whether he had "[gone] over [the] presentence report" and "discussed it thoroughly with . . . counsel." Sentencing Tr. [doc. # 1170] at 4: 15-16, 18-19. To both of those questions, Mr. Gladney replied, "Yes." *Id.* at 4:17, 20. Mr. Gladney was also asked whether he "ha[d] any additions, suggestions, or corrections with respect to any of the factual statements in the presentence report." *Id.* at 4:21-23. To that question, Mr. Gladney replied, "No." *Id.* at 4:24. Mr. Gladney's emphasis on the Government's admission, at the sentencing hearing, that it could not prove that Mr. Gladney "was dealing drugs" beyond a reasonable doubt is misplaced. Mem. in Supp. [doc. # 1161] at 5-6. As the Government notes, the distribution element in the

telephone count to which Mr. Gladney pled guilty "does not necessarily require a sale of drugs; providing it to others is sufficient for liability." Mem. in Opp'n [doc. # 1274] at 7; *see United States v. Wallace*, 532 F.3d 126, 129 (2d Cir. 2008) (holding that "the sharing of drugs, without a sale, constitutes distribution for the purposes of 21 U.S.C. § 841(a)").

Therefore, Mr. Gladney does not raise a substantial question as to whether a strategic choice by counsel to advise Mr. Gladney to enter into a plea agreement notwithstanding the pending motion to suppress, and despite the fact that the agreement stipulated to a drug quantity of between 50 and 100 grams of cocaine, "was . . . 'below an objective standard of reasonableness,' so as to make [counsel's] assistance constitutionally ineffective." *Sylvester*, 369 F. App'x at 219. The instant motion seems to reflect buyer's remorse as prison looms near, rather than a claim of real substance. *Cf. United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992) ("The fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea.").[3]

### III.

As the Government notes, "[t]here is no factual record regarding the discovery to which [Mr. Gladney's prior] counsel had access, information regarding anticipated testimony from cooperating witnesses of which defense counsel might have had knowledge, discussions that counsel had with his client regarding quantity issues to which the defendant has now opened the door and any other

---

[3] Much of the debate between Mr. Gladney and the Government involves the question of whether the Second Circuit will review Mr. Gladney's claim of ineffective assistance of counsel on direct appeal, rather than in the context of a 28 U.S.C. § 2255 petition. The Court does not take a position on that issue, and it is not a basis for the Court's decision in this Ruling and Order.

information known to defense counsel in evaluating the disposition of defendant's case." Mem. in Opp'n [doc. # 1274] at 4. More importantly for this Court, Mr. Gladney has not made any allegations that would require the development of a factual record regarding those issues. Of course, Mr. Gladney and his new counsel could have set forth facts that would warrant an evidentiary hearing on his motion. But they did not do so. Rather, they rely on a conclusory affidavit and argument in a memorandum, neither of which allege facts that, if proven, would show that prior counsel's strategic advice with regard to the motion to suppress and the drug quantity stipulation was based on a deficient investigation of relevant facts and law, or otherwise so unreasonable as to render counsel's assistance constitutionally ineffective. Because Mr. Gladney has failed to allege any objectively unreasonable conduct by his former counsel, there is no need for an evidentiary hearing on Mr. Gladney's motion to stay execution of his sentence.

## IV.

For the foregoing reasons, the Court finds that Mr. Gladney's claim of ineffective assistance of counsel does not raise any "substantial question of law or fact" under 18 U.S.C. § 3143(b). The Court is satisfied that Mr. Gladney's former counsel – who has considerable experience with criminal cases – represented Mr. Gladney well, and that the former counsel's performance did not fall below the standard of objective reasonableness. The question is not a close one. Mr. Gladney's Motion for Stay of Execution of Sentence Pending Appeal [doc. # 1160] is therefore DENIED.

IT IS SO ORDERED,

/s/      Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: February 2, 2011.**